UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| BANK OF AMERICA, N.A.,<br><br>                          Plaintiff(s),<br><br>   v.<br><br>TREASURES LANDSCAPE<br>MAINTENANCE ASSOCIATION, et al.,<br><br>                          Defendant(s). | Case No. 2:16-CV-380 JCM (NJK)<br><br>ORDER |

Presently before the court is crossclaimant RLP Fern Crest, LLC, a series of Red Lizard Productions, LLC's ("Fern Crest") motion for summary judgment. (ECF No. 48). Plaintiff Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP ("BANA") (ECF No. 51) and crossdefendant Treasures Landscape Maintenance Association (the "HOA") (ECF No. 55) filed responses. Fern Crest has not replied, and the period to do so has since passed.

Also before the court is BANA's motion for summary judgment. (ECF No. 49). Fern Crest (ECF No. 53) and the HOA (ECF No. 54) filed responses, to which BANA replied (ECF No. 61).

Also before the court is the HOA's motion for summary judgment. (ECF No. 50). BANA filed a response (ECF No. 52), to which the HOA replied (ECF No. 57).

Also before the court is the HOA's motion to dismiss Fern Crest's answer, counterclaim, and crossclaim (ECF No. 14). (ECF No. 56). BANA filed a response. (ECF No. 62). The HOA has not replied, and the period to do so has since passed.

. . .

. . .

**I. Facts**

This case involves a dispute over real property located at 2913 Fern Crest Avenue, North Las Vegas, Nevada 89031 (the "property").

William and Amber Morris purchased the property on June 9, 2003. (ECF No. 1 at 4). To refinance the property, they obtained a loan in the amount of $235,869.00, which was secured by a deed of trust recorded on December 10, 2008. (ECF No. 1 at 4).

The deed of trust was assigned to BANA via an assignment deed of trust recorded April 16, 2010. (ECF No. 1 at 4).

On May 20, 2011, defendant Nevada Association Services, Inc. ("NAS"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $1,343.40. (ECF No. 1 at 4). On July 18, 2011, NAS recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $1,975.50. (ECF No. 1 at 4).

On May 15, 2012, NAS recorded a notice of trustee's sale, stating an amount due of $3,146.17. (ECF No. 1 at 5). On December 14, 2012, defendant Red Lizard Productions, LLC. ("RLP") purchased the property at the foreclosure sale for $3,955.00. (ECF No. 1 at 5–6). A foreclosure deed in favor of RLP was recorded on December 20, 2012. (ECF No. 1 at 5).

On November 24, 2015, RLP recorded a grant, bargain, sale deed conveying the property to Fern Crest. (ECF No. 1 at 6). Thus, Fern Crest is the current record owner of the property.

On February 24, 2016, BANA filed the underlying complaint, alleging four causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against NAS and the HOA; (3) wrongful foreclosure against NAS and the HOA; and (4) injunctive relief against RLP and Fern Crest. (ECF No. 1). On February 17, 2017, the court dismissed claims (2) through (4) of BANA's complaint for failure to mediate pursuant to NRS 38.310. (ECF No. 70).

On April 18, 2016, Fern Crest filed a counterclaim against BANA and crossclaims against the HOA and NAS alleging four causes of action: (1) declaratory relief/quiet title against all parties; (2) preliminary and permanent injunction against BANA from foreclosure action; (3) slander of title against BANA; and (4) unjust enrichment against all parties. (ECF No. 14).

In the instant motions, Fern Crest, BANA, and the HOA all move for summary judgment in their favor (ECF Nos. 48, 49, 50), and the HOA moves to dismiss Fern Crest's crossclaims (ECF No. 56). The court will address each as it sees fit.

**II.    Legal Standards**

   **A.  Motion to Dismiss**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678–79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678.

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks omitted). When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court stated, in relevant part:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

### B. Motion for Summary Judgment

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed

to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As an initial matter, the court dismisses, without prejudice, claims (2) through (4) of Fern Crest's answer, counterclaim, and crossclaim (ECF No. 14).

Fern Crest's preliminary and permanent injunction claim (claim 2) is dismissed because the court follows the well-settled rule in that a claim for "injunctive relief" standing alone is not a

cause of action. *See, e.g.*, *In re Wal–Mart Wage & Hour Emp't Practices Litig.*, 490 F. Supp. 2d 1091, 1130 (D. Nev. 2007); *Tillman v. Quality Loan Serv. Corp.*, No. 2:12-CV-346 JCM RJJ, 2012 WL 1279939, at *3 (D. Nev. Apr. 13, 2012) (finding that "injunctive relief is a remedy, not an independent cause of action"); *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1201 (E.D. Cal. 2010) ("A request for injunctive relief by itself does not state a cause of action."). Injunctive relief may be available if Fern Crest is entitled to such a remedy on an independent cause of action.

Fern Crest's slander of title claim (claim 3) and unjust enrichment claim (claim 4) are dismissed for the same reasons set forth in the court's February 17th order (ECF No. 70)—namely, because they are subject to NRS 38.310's mediation requirement. *See* Nev. Rev. Stat. § 38.310; *see, e.g.*, *Nationstar Mortg., LLC v. Berezovsky*, No. 215CV909JCMCWH, 2016 WL 1064477, at *2 (D. Nev. Mar. 17, 2016) (holding that unjust enrichment claims are subject to NRS 38.310's mediation requirement); *McKnight Family, L.L.P. v. Adept Mgmt.*, 310 P.3d 555, 559 (Nev. 2013) (holding that slander of title claims are subject to NRS 38.310 and must be submitted to mediation prior to being brought in district court). Consequently, Fern Crest must mediate these claims prior to bringing them in district court.

### A. The HOA's Motion to Dismiss (ECF No. 56)

The HOA argues that dismissal of Fern Crest's crossclaims is proper because Fern Crest failed to serve the HOA with the answer, counterclaim, and crossclaim (ECF No. 14) in accordance with Rule 4(m). (ECF No. 56). The court disagrees.

Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Fern Crest's answer, counterclaim, and crossclaim (ECF No. 14), however, are pleadings filed after the original complaint and are therefore governed by Rule 5 and LR IC 4-1, not Rule 4(m). *See* Fed. R. Civ. P. 5(b), (d); LR IC 4-1 ("[E]lectronic transmission of the Notice of Electronic Filing constitutes service of a document on filers."). Thus, service of Fern Crest's answer, counterclaim, and crossclaim was made upon filing and the electronic transmission of the notice of electronic filing.

Next, the HOA argues that it is not a proper party to Fern Crest's claim for quiet title/declaratory relief. (ECF No. 56). Again, the court disagrees. In fact, the court has already rejected this argument in its February 17th order (ECF No. 70). Thus, for the same reasons set forth in the court February 17th order, the HOA's motion will be denied to the extent that it argues that it is an improper party.

Accordingly, the court will deny the HOA's motion to dismiss Fern Crest's answer, counterclaim, and crossclaim.

## B. Motions for Summary Judgment[1]

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (citations and internal quotation marks omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

### *1. Deed Recitals*[2]

Section 116.3116(1) of the Nevada Revised Statutes gives an HOA a lien on its homeowners' residences for unpaid assessments and fines; moreover, NRS 116.3116(2) gives

---

[1] The court takes judicial notice of the following recorded documents: first deed of trust (ECF No. 51, exh. A); notice of delinquent assessment (ECF No. 48 at 17); notice of default and election to sell (ECF No. 48 at 20–21); notice of trustee's sale (ECF No. 48 at 31–32); trustee's deed upon sale (ECF No. 48 at 13–15); assignment of deed of trust (ECF No. 51, exh. C); and grant, bargain, and sale deed (ECF No. 48 at 54–57). *See, e.g.*, *United States v. Corinthian Colls.*, 655 F.3d 984, 998–99 (9th Cir. 2011) (holding that a court may take judicial notice of public records if the facts noticed are not subject to reasonable dispute); *Intri-Plex Tech., Inv. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).

[2] The 2015 Legislature revised Chapter 116 substantially. 2015 Nev. Stat., ch. 266. Except where otherwise indicated, the references in this order to statutes codified in NRS Chapter 116 are to the version of the statutes in effect in 2011–12, when the events giving rise to this litigation occurred.

priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investment Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[3] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale

---

[3] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"). Nevertheless, courts retain the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See id.* at 1112.

Here, Fern Crest has provided the recorded trustee's deed upon sale, the recorded notice of delinquent assessment, the recorded notice of default and election to sell, and the recorded notice of trustee's sale. (ECF No. 48). Pursuant to NRS 116.31166, these recitals in the recorded foreclosure deed are conclusive to the extent that they implicate compliance with NRS 116.31162 through NRS 116.31164, which provide the statutory prerequisites of a valid foreclosure. *See id.* at 1112 ("[T]he recitals made conclusive by operation of NRS 116.31166 implicate compliance only with the statutory prerequisites to foreclosure."). Therefore, pursuant to NRS 116.31166 and the recorded foreclosure deed, the foreclosure sale is valid to the extent that it complied with NRS 116.31162 through NRS 116.31164.

Importantly, while NRS 116.3116 accords certain deed recitals conclusive effect—*e.g.*, default, notice, and publication of the notice of sale—it does not conclusively, as a matter of law, entitle Fern Crest to success on its quiet title claim. *See Shadow Wood*, 366 P.3d at 1112 (rejecting contention that NRS 116.31166 defeats, as a matter of law, action to quiet title). Thus, the question remains whether BANA has demonstrated sufficient grounds to justify setting aside the foreclosure sale. *See id.* "When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief." *Id*.

. . .

. . .

---

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

**James C. Mahan**
**U.S. District Judge**

### *2. Failure to Tender*

The complaint asserts that "[o]n information and belief, had BANA or anyone else tendered the super-priority amounts due under [the HOA's] claimed lien, [the HOA] and/or its agent NAS would have rejected the tender." (ECF No. 1 at 5). BANA, however, has failed to provide any evidence in support of this assertion. In fact, BANA's motion for summary judgment ignores the issue completely. (*See* ECF No. 49).

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

The superpriority lien portion, however, consists of "the last nine months of unpaid HOA dues ***and maintenance and nuisance-abatement charges***," while the subpriority piece consists of "all other HOA fees or assessments." *SFR Investments*, 334 P.3d at 411 (emphasis added); *see also 7912 Limbwood Ct. Trust*, 979 F. Supp. 2d at 1150 ("The superpriority lien consists only of unpaid assessments and certain charges specifically identified in § 116.31162.").

BANA merely presumed, without adequate support, that the amount set forth in the notice of foreclosure sale included more than the superpriority lien portion and that any tender would have been rejected by the HOA and/or NAS. In particular, BANA's complaint alleges that the notice of sale failed to identify the superpriority amount and describe the deficiency in payment as required by NRS 116.311635(3)(a). (ECF No. 1 at 5).

The version of NRS 116.311635(3)(a) in effect at the time of the notice of sale, however, sets forth no such requirements. *See* Nev. Rev. Stat. § 116.311635(3)(a) (*eff.* to Sept. 2013). Rather, the then-controlling version of NRS 116.311635 provided as follows:

3. Any copy of the notice of sale required to be served pursuant to this section must include:

    (a) The amount necessary to satisfy the lien as of the date of the proposed sale; and

    (b) The following warning in 14-point bold type:

**WARNING! A SALE OF YOUR PROPERTY IS IMMINENT! UNLESS YOU PAY THE AMOUNT SPECIFIED IN THIS NOTICE BEFORE THE SALE DATE, YOU COULD LOSE YOUR HOME, EVEN IF THE AMOUNT IS IN DISPUTE. YOU MUST ACT BEFORE THE SALE DATE. IF YOU HAVE ANY QUESTIONS, PLEASE CALL (name and telephone number of the contact person for the association). IF YOU NEED ASSISTANCE, PLEASE CALL THE FORECLOSURE SECTION OF THE OMBUDSMAN'S OFFICE, NEVADA REAL ESTATE DIVISION, AT (toll-free telephone number designated by the Division) IMMEDIATELY.**

Nev. Rev. Stat. § 116.311635(3)(a) (*eff.* to Sept. 2013). The notice of foreclosure sale recorded May 15, 2012, satisfied these requirements and set forth an amount due of $3,146.17.

Rather than tendering the $3,146.17 due so as to preserve its interest in the property and then later seeking a refund of any difference, BANA elected not to pay any amount because it assumed that any tender would have been rejected. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BANA paid the amount set forth in the notice of foreclosure sale ($3,146.17), the HOA's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). *See generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. § 40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

After failing to use the legal remedies available to BANA to prevent the property from being sold to a third party—for example, seeking a temporary restraining order and preliminary injunction and filling a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BANA now seeks to profit from its own failure to follow the rules set forth in the statutes. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by

such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Based on the foregoing, BANA has failed to sufficiently establish that BANA tendered any amount prior to the foreclosure sale so as to render Fern Crest's title subject to BANA's deed of trust.

### 3. *Supremacy Clause*

BANA argues that the HOA lien statute cannot interfere with the federal mortgage insurance program or extinguish mortgage interests insured by the FHA. (ECF No. 49 at 9–15).

The single-family mortgage insurance program allows FHA to insure private loans, expanding the availability of mortgages to low-income individuals wishing to purchase homes. *See Sec'y of Hous. & Urban Dev. v. Sky Meadow Ass'n*, 117 F. Supp. 2d 970, 980–81 (C.D. Cal. 2000) (discussing program); *W Wash. & Sandhill Homeowners Ass'n v. Bank of Am., N.A.*, No. 2:13-cv-01845-GMN-GWF, 2014 WL 4798565, at *1 n.2 (D. Nev. Sept. 25, 2014) (same). If a borrower under this program defaults, the lender may foreclose on the property, convey title to HUD, and submit an insurance claim. 24 C.F.R. § 203.355. HUD's property disposition program generates funds to finance the program. *See* 24 C.F.R. § 291.1.

Allowing an HOA foreclosure to wipe out a first deed of trust on a federally-insured property thus interferes with the purposes of the FHA insurance program. Specifically, it hinders HUD's ability to recoup funds from insured properties. As this court previously stated in *SaticoyBayLLC, Series 7342 Tanglewood Park v. SRMOF II 2012-1 Trust*, the court reads the foregoing precedent to indicate that a homeowners' association foreclosure sale under NRS 116.3116 may not extinguish a federally-insured loan. No. 2:13–CV–1199 JCM (VCF), 2015 WL 1990076, at *4 (D. Nev. Apr. 30, 2015).

However, the instant case is distinguishable from these cases in that, here, FHA is not a named party. The complaint nor the counterclaim/crossclaim seeks to quiet title against FHA. In

particular, Fern Crest's quiet title claim does not seek declaratory relief against FHA, but only as to BANA. Thus, this argument provides no support for BANA as the outcome of the instant case has no bearing on FHA's ability to quiet title.

### *4. Commercial Reasonability*

BANA contends that judgment in its favor is appropriate because the sale of the property for less than 20% its fair market value is grossly inadequate as a matter of law. (ECF No. 49 at 15–17). BANA further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 49 at 15) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[4]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed where there is a "grossly inadequate" sales price ***and*** "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its

---

[4] *See, e.g., Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id*. at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BANA's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BANA fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BANA relies on its unwarranted assumption that the HOA and/or NAS would have rejected any tender to show fraud, unfairness, or oppression. However, as discussed in the section above, the notice of trustee's sale stated an amount due of $3,146.17. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BANA chose to not tender any amount because it assumed that any tender would have been rejected.

### 5. *Bankruptcy Stay*

BANA argues that the HOA violated the automatic bankruptcy stay pursuant to 11 U.S.C. § 362 by recording the notices of lien, default, and sale while the bankruptcy case was pending. (ECF No. 49 at 18). BANA alleges that the borrowers filed bankruptcy in October 2010 and received a discharge on January 12, 2011. (ECF No. 49-4 at 5).[5] The bankruptcy case was closed on April 17, 2012. (ECF No. 49-4 at 6). BANA maintains that the HOA's acts were taken in violation of the bankruptcy stay and are therefore void. (ECF No. 49 at 18–19). BANA thus concludes that Fern Crest's claim to title, which is based on the HOA's void acts, is also void. (ECF No. 49 at 18–19).

Assuming, *arguendo*, that this argument is properly and timely raised by BANA, it still fails. The deed of trust was assigned to BANA via an assignment deed of trust recorded April 16, 2010—prior to the initiation of the bankruptcy case on October 4, 2010. (ECF Nos. 1 at 4; 49-4 at 2). BANA has provided no evidence to show that the property was a part of the borrowers' estate at the commencement of the bankruptcy action or that it was otherwise involved therein. Instead, BANA merely attaches the docket sheet for the bankruptcy action to its motion and asserts

---

[5] According to the bankruptcy case docket sheet that BANA attached to its motion for summary judgment (ECF No. 49-4), the order discharging debtor was entered on January 12, 2011 (ECF No. 49-4 at 5) and the final decree, discharge of trustee, and closing of chapter 7 case was entered on April 17, 2012 (ECF No. 49-4 at 6). BANA has asserted incorrect and conflicting dates as to when the bankruptcy case closed. (*See* ECF No. 1 at 6 (March 27, 2012); ECF No. 49 at 18 (October 17, 2014)).

that the stay is applicable. Further, the foreclosure sale (December 14, 2012) was an act that took place after the bankruptcy case was closed (April 17, 2012). [6]

### 6. *Retroactivity*

BANA contends that *SFR Investments* should not be applied retroactively to extinguish the first deed of trust. (ECF No. 49 at 19–20).

The Nevada Supreme Court has since applied the *SFR Investments* holding in numerous cases that challenged pre-*SFR Investments* foreclosure sales. *See, e.g.*, *Centeno v. Mortg. Elec. Registration Sys., Inc.*, No. 64998, 2016 WL 3486378, at *2 (Nev. June 23, 2016); *LN Mgmt. LLC Series 8301 Boseck 228 v. Wells Fargo Bank, N.A.*, No. 64495, 2016 WL 1109295, at *1 (Nev. Mar. 18, 2016) (reversing 2013 dismissal of quiet-title action that concluded contrary to *SFR Investments*, reasoning that "the district court's decision was based on an erroneous interpretation of the controlling law"); *Mackensie Family, LLC v. Wells Fargo Bank, N.A.*, No. 65696, 2016 WL 315326, at *1 (Nev. Jan. 22, 2016) (reversing and remanding because "[t]he district court's conclusion of law contradicts our holding in *SFR Investments Pool 1 v. U.S. Bank*"). Thus, *SFR Investments* applies to this case.

### 7. *Due Process*

BANA argues that the HOA lien statute is facially unconstitutional because it does not mandate notice to deed of trust beneficiaries. (ECF No. 49 at 5–9). BANA further contends that

---

[6] Subsection (a) of 11 U.S.C. § 362 provides, in relevant part, that the following are stayed:

. . . .

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title[.]

. . . .

11 U.S.C. § 362(a)(4)–(5).

any factual issues concerning actual notice is irrelevant pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016) ("*Bourne Valley*"). (ECF No. 49 at 5–9).

The Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. The facially unconstitutional provision, as identified in *Bourne Valley*, exists in NRS 116.31163(2). *See id.* at 1158. At issue is the "opt-in" provision that unconstitutionally shifts the notice burden to holders of the property interest at risk. *See id.*

To state a procedural due process claim, defendants must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). Defendants have satisfied the first element as a deed of trust is a property interest under Nevada law. *See* Nev. Rev. Stat. § 107.020 *et seq.*; *see also Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 (1983) (stating that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale"). However, defendants fail on the second prong.

Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158.

Here, adequate notice was given to the interested parties prior to extinguishing a property right. NAS recorded the notice of trustee's sale on May 15, 2012 and sent copies by certified mail to all interested parties including BANA (ECF No. 48 at 33–37). As a result, the notice of trustee's sale was sufficient notice to cure any constitutional defect inherent in NRS 116.31163(2) as it put BANA on notice that its interest was subject to pendency of action and offered all of the required information.

. . .

. . .

## IV. Conclusion

For the reasons set forth above, claims (2) through (4) of Fern Crest's answer, counterclaim, and crossclaim (ECF No. 14) are dismissed without prejudice and the HOA's motion to dismiss (ECF No. 56) Fern Crest's answer, counterclaim, and crossclaim is denied.

Further, and based on the aforementioned, the court finds that Fern Crest has shown that it is entitled to summary judgment in its favor on its quiet title claim against BANA, the HOA, and NAS. Fern Crest has provided the foreclosure deed (in favor of RLP) containing the necessary deed recitals to show that the foreclosure sale complied with the statutory prerequisites of a valid foreclosure sale as set forth in NRS 116.31162 through NRS 116.31164, as well as the grant, bargain, sale deed conveying the property from RLP to Fern Crest.

BANA has failed to raise a genuine issue so as to preclude summary judgment in favor of Fern Crest on Fern Crest's quiet title claim. Nor has BANA shown that it is entitled to summary judgment on its quiet title claim against Fern Crest, RLP, the HOA, and NAS.

BANA failed to tender the amount provided in the notice of sale, as instructed by the applicable statute and the notice itself, and failed to meet its burden to show that a genuine issue of material fact exists regarding any deficiencies in the notices, commercial unreasonableness of the foreclosure sale, or constitutionally insufficient notice.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that claims (2) through (4) of Fern Crest's answer, counterclaim, and crossclaim (ECF No. 14) be, and the same hereby are, DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that the HOA's motion to dismiss (ECF No. 56) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Fern Crest's motion for summary judgment (ECF No. 48) be, and the same hereby is, GRANTED consistent with the foregoing.

IT IS FURTHER ORDERED that BANA's motion for summary judgment (ECF No. 49) be, and the same hereby is, DENIED consistent with the foregoing.

1 | IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 50)
2 | be, and the same hereby is, GRANTED consistent with the foregoing.
3 | The clerk is instructed to enter judgment accordingly and close the case.
4 | DATED April 17, 2017.

_____
UNITED STATES DISTRICT JUDGE